IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

SYDNEY MORGAN,                          )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )        Case No.
                                        )
DOUGLAS A. COLLINS,                     )
IN HIS OFFICIAL CAPACITY AS             )
SECRETARY OF VETERAN AFFAIRS,           )        Request for Jury Trial
                                        )
            Defendant.                  )

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Sydney Morgan ("Plaintiff") and for their Complaint against

Defendant Douglas A. Collins, acting Secretary of Veteran Affairs, ("Defendant"), alleges and

states as follows:

### Parties and Jurisdiction

1. Plaintiff was, at all times pertinent to this Complaint for Damages, an employee of the

   Department of Veteran Affairs in Kansas City, Missouri.

2. Plaintiff is a citizen of the United States, residing in Lawrence, Douglas County,

   Kansas.

3. At all times pertinent to this Complaint, Plaintiff was non-binary individual, meaning

   they did not identify as male or female, making them a member of the protected class

   "sex" within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII").

4. Plaintiff is also an employee within the meaning of Title VII.

5. Defendant is an employer within the meaning of Title VII.

6. At all times pertinent to this Complaint for Damages, Plaintiff had a disability as defined by the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701, et seq ("Rehabilitation Act").

7. Plaintiff is also an employee within the meaning of the Rehabilitation Act.

8. Defendant is an employer within the meaning of the Rehabilitation Act.

9. Defendant is the Secretary of Veteran Affairs. In that capacity, he is the Chief Executive Officer for the Department of Veteran Affairs, which is a department within the Federal Government of the United States.

10. The Complaint is brought under Title VII and the Rehabilitation Act.

11. Some, if not all, of the alleged unlawful practices took place in the State of Kansas, within the territory of the United States District Court for the District of Kansas.

12. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391.

**<u>Administrative Procedure and Procedural Posture</u>**

13. On or about March 14, 2024, Plaintiff initiated a complaint of discrimination with the local Equal Employment Opportunity Office ("EEOO") and subsequently .

14. On or about April 25, 2024, Plaintiff converted their original complaint to a formal Charge of Discrimination with Department of Veteran Affairs EEOO. Their charge identified "Sex" and "Disability" as bases for their claim of harassment (non-sexual) and hostile work environment.

15. The EEOO accepted Plaintiff's claims for investigation by letter dated July 25, 2024.

16. Following investigation, Plaintiff timely requested a Final Agency Determination ("FAD").

17. On or about December 9, 2025, Plaintiff received notice of the FAD and a Right to File a Civil Lawsuit.

18. This Complaint is filed within 90 days of the issuance of the notice of the FAD and Right to File a Civil Lawsuit.

19. Plaintiff has fully complied with all administrative requisites before filing the original cause of action.

## General Allegations Common to all Counts

20. Plaintiff, at all times pertinent to this Complaint, was an employee of Defendant.

21. Plaintiff was employed with Defendant as a member of the Crisis Line, beginning in or around 2019.

22. Plaintiff is a nonbinary individual diagnosed with post-traumatic stress disorder ("PTSD").

23. Plaintiff is a member of the protected classes "sex" and "disability".

24. Plaintiff was subjected to disparate treatment by their coworkers due to their sex and disability during their employment with the Department of Veteran Affairs.

25. Plaintiff's supervisors participated in and condoned the harassment and hostile work environment against Plaintiff at the hands of their coworkers.

26. Prior to working for Defendant, Plaintiff was discharged from the United States Marine Corps as 100% disabled.

27. In or about 2022, Plaintiff disclosed to their supervisors and coworkers that they used they/them pronouns during a campaign to create more gender inclusivity in the workplace.

28. Both coworkers and supervisors have repeatedly failed to use Plaintiff's preferred pronouns since then, despite being corrected multiple times.

29. Defendant requested that Plaintiff make a presentation to educate their coworkers on non-traditional pronouns after Plaintiff announced they used they/them pronouns.

30. Plaintiff declined to make the presentation due to workload constraints, and shortly thereafter Plaintiff was given a supervisor detail, meaning they were given an assignment as an acting supervisor.

31.  After being assigned the detail as a supervisor, other supervisors began to create problems for Plaintiff.

32. Defendant did not ask any other workers to create the presentation on pronouns, and completely abandoned the attempt to educate their employees on pronouns and gender identity.

33. Plaintiff's position at the time was a temporary position, and they were encouraged to apply for permanent work within the Department.

34. Plaintiff applied for a position that was posted internally.

35. On or about November 23, 2023, interviewers asked Plaintiff various informal questions that were not included on the list of normally accepted interview questions.

36. Plaintiff was not asked any questions about their job capabilities.

37. Upon information and belief, the interviewers asked Plaintiff questions that were outside of protocol in order to weaken Plaintiff as a candidate for the position.

38. Upon information and belief, interviewers did not ask other candidates questions outside of the protocol.

39. In or about November 2023, Plaintiff's supervisor told Plaintiff about a position that was open, but the position was not posted or otherwise communicated to Plaintiff or any other employees of Defendant.

40. Plaintiff applied for and received the position, but Plaintiff was unaware the position was without pay until they were awarded the position.

41. The new position increased Plaintiff's work load significantly without any increase in pay.

42. Plaintiff began to experience an increase of their PTSD symptoms and suicidal ideation due to the high workload and stress caused by their job.

43. Plaintiff communicated their distress regarding the position to supervisors and was told that they should not leave the position because it was allegedly a great opportunity for Plaintiff.

44. Upon information and belief, Plaintiff was encouraged by Defendant to apply for and remain in the position in order to create an untenable work environment that would eventually induce Plaintiff to quit their employment with Defendant.

45. On or about December 6, 2023, Plaintiff was informed that they were going to have to give a presentation to a group of supervisors in order to prove that they were capable of training others.

46. At that time, Plaintiff was the longest employed trainer with Defendant within their department, and no other trainers were required to deliver a practice presentation to prove their teaching capabilities.

47. Upon information and belief, Defendant made Plaintiff give the presentation in order to unreasonably add to Plaintiff's workload.

48. Plaintiff attempted to bring their concerns about their work to Defendant on multiple occasions, but Defendant deflected Plaintiff's attempts to discuss their situation by stating that Plaintiff was "too emotional" to discuss the matter.

49. In January 2024, Plaintiff attempted to take Leave Without Pay ("LWOP"), to which they were entitled as a disabled veteran, but Plaintiff's supervisor failed to approve Plaintiff's request for LWOP until the day before Plaintiff's requested leave was supposed to start.

50. Defendant told Plaintiff they had to receive approval in order to attend trainings and events hosted by the Department of Veterans Affairs, despite this not being protocol for other employees of Defendants.

51. In 2024, seven of Plaintiff's coworkers, all of which Plaintiff had trained, committed suicide.

52. Defendant offered Plaintiff no additional support or mental health services following these deaths.

53. Plaintiff was the only non-binary identified person in their department.

54. Other persons, who were not non-binary identified and who identified with the traditional gender binary of male and female were treated better than Plaintiff.

55. Plaintiff was treated differently and less favorably than their coworkers because of their non-binary identity.

56. Plaintiff was also treated differently than their coworkers because of their disability of PTSD.

57. Plaintiff's was treated less favorably than their coworkers who did not have a disability.

58. Plaintiff was damaged by the disparate treatment.

### Count I – Violation of Title VII – Sex Discrimination –

### Hostile Work Environment

59. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs.

60. Plaintiff is a non-binary person and a member of the protected class "sex".

61. Plaintiff was subjected to sex discrimination and/or hostile work environment at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant

permitted Plaintiff's coworkers to discriminate against Plaintiff because of Plaintiff's sex and non-binary gender identity.

62. Plaintiff was treated less favorably when they were given a heavier workload, were asked different questions during interviews, were required to obtain approval for proposed activities that others were not required to obtain, were required to prove their performance as a trainer without cause when no one else was required to do the same, as well as other disparate treatment.

63. Plaintiff reported the discriminatory practices to Defendant, and Defendant (through its agents, other employees, managers, and supervisors) made no attempt to remedy the situation.

64. Defendant's discrimination against Plaintiff directly and materially affected a term, condition, or privilege of Plaintiff's employment in that they were subjected to illegal discrimination and a hostile work environment by Defendant.

65. By not taking action to stop or rectify the discriminatory treatment of Plaintiff, Defendant ratified, authorized and/or condoned the conduct of its agents and employees.

66. Defendant knew of the discrimination and failed to take appropriate action, or any remedial action whatsoever.

67. Plaintiff has been damaged as a result of Defendant's actions and/or inaction.

68. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and against Defendant for economic damages; injunctive relief; compensatory damages; punitive damages; for reasonable attorney fees and costs incurred herein; for pre- and post judgment

interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

## Count II – Violation of the Rehabilitation Act – Disability Discrimination –

## Hostile Work Environment

69. Plaintiff re-alleges and incorporates by reference all of the allegations contained in the foregoing paragraphs.

70. Plaintiff is diagnosed with PTSD, and therefore a member of the protected class "disability"

71. Plaintiff was subjected to disability discrimination and/or subjected to a hostile work environment at the hands of Defendant and/or Defendant's agents and subordinates, in that Defendant permitted Plaintiff's coworkers to discriminate against and harass Plaintiff because of their disability.

72. Plaintiff was treated less favorably when they were given a heavier workload, were asked different questions during interviews, were required to obtain approval for proposed activities that others were not required to obtain, were required to prove their performance as a trainer without cause when no one else was required to do the same, as well as other disparate treatment.

73. Plaintiff reported the discriminatory practices to Defendant, and Defendant (through its agents, other employees, managers, and supervisors) made no attempt to remedy the situation.

74. Defendant's discrimination against Plaintiff directly and materially affected a term, condition, or privilege of Plaintiff's employment in that they were subjected to discrimination and a hostile work environment.

75. By not taking action to stop or rectify the discriminatory treatment of Plaintiff, Defendant ratified, authorized and/or condoned the conduct of its agents and employees.

76. Defendant knew of the discrimination and failed to take appropriate action, or any remedial action whatsoever.

77. Plaintiff has been damaged as a result of Defendant's actions and/or inaction.

78. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and against Defendant for economic damages; injunctive relief; compensatory damages; punitive damages; for reasonable attorney fees and costs incurred herein; for pre- and post judgment interest as allowed by law; and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

MISSOURI KANSAS QUEER LAW

/s/ *Madeline Johnson*
Mary Madeline Johnson, D.Kan. Bar #77985
103 W. 26th Avenue, Suite 200
North Kansas City, Missouri 64116
Telephone: (816) 607-1836
Email: madeline@mokanqueerlaw.com
ATTORNEY FOR PLAINTIFF