## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SYDNEY MORGAN[1],                            )
                                             )
                    Plaintiff,               )
                                             )
vs.                                          )          Case No. 26-cv-02124-TC-ADM
                                             )
DOUGLAS A. COLLINS, in his official          )
capacity as Secretary of Veterans Affairs,   )
                                             )
                    Defendant.               )
_____      )

### MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

The United States, on behalf of Douglas A. Collins, in his official capacity as Secretary

of the Department of Veterans Affairs (the "VA"), hereby moves this Court for an Order

dismissing Plaintiff's claims against the VA for failure to state a claim under Federal Rule of

Civil Procedure Rule 12(b)(6). In support of this motion, the United States provides as follows:

### STATEMENT OF FACTS

The following facts are drawn from the allegations in Plaintiff's Complaint.  For purposes

of this motion only, the non-conclusory facts alleged in Plaintiff's Complaint are assumed to be

true.

Plaintiff's employment with the VA as a member of the Crisis Line team began in or

around 2019. (Doc. 1, ¶ 21).[2] Prior to becoming a member of the Crisis Team, Plaintiff was

discharged from the United States Marine Corps. (Doc. 1, ¶ 26).  Plaintiff identifies as nonbinary

---

[1] It appears that Plaintiff's name is misspelled in the Complaint's Caption. It is Defendant's understanding that Plaintiff's name is spelled *Sidney* Morgan.

[2] Plaintiff alleges that Plaintiff is a VA employee "in Kansas City Missouri." (Doc. 1, ¶ 1). This appears to be a mistake. The Veterans Crisis Line (VCL) is not located in Kansas City, Missouri. VCL has a physical location in Topeka, Kansas, but most positions are remote.

and has been diagnosed with Post-Traumatic Stress Disorder. (Doc. 1, ¶22). Plaintiff alleges that Plaintiff has a 100% disability rating. (Doc. 1, ¶ 26).

In 2022, Plaintiff disclosed to unnamed supervisors and coworkers that Plaintiff "used they/them pronouns during a campaign to create more gender inclusivity in the workplace." (Doc. 1, ¶ 27). Plaintiff alleges that Plaintiff "was the only non-binary identified person" in the Crisis Line department. (Doc. 1, ¶ 53). According to Plaintiff, coworkers and supervisors failed to use the "preferred pronouns since then, despite being corrected multiple times." (Doc. 1, ¶ 28). Plaintiff does not allege whether this failure was purposeful or accidental. After Plaintiff announced that Plaintiff used they/them pronouns, Plaintiff was asked to give a presentation to educate coworkers on "non-traditional pronouns." (Doc. 1, ¶ 29). Plaintiff declined to make the presentation. (Doc. 1, ¶ 30). No other workers were asked to create the presentation, and no further attempts were made "to educate [] employees on pronouns and gender identity." (Doc. 1, ¶ 32). "[S]hortly thereafter, Plaintiff was given a supervisory detail" to serve as an acting supervisor. (Doc. 1, ¶ 30). Plaintiff vaguely alleges that other supervisors "began to create problems for Plaintiff" after being assigned the supervisory detail. (Doc. 1, ¶ 31).

Plaintiff's acting supervisor position with the VA was a temporary position. (Doc. 1, ¶ 33). In 2023, Plaintiff was encouraged to apply for a permanent position. (*Id*.). Plaintiff applied and, on or about November 23, 2023, Plaintiff interviewed for the position. (Doc. 1, ¶ 35). During this interview, Plaintiff was allegedly asked "various informal questions that were not included on the list of normally accepted interview questions." (*Id*.). According to Plaintiff, "upon information and belief," no other candidates were asked "questions outside of the protocol." (Doc. 1, ¶ 38). Plaintiff alleges "[u]pon information and belief" that the questions were asked to "weaken Plaintiff as a candidate for the position." (Doc. 1, ¶ 37).

2

Also in November 2023, Plaintiff's supervisor told Plaintiff about a position that was open but not posted. (Doc. 1, ¶ 39). Plaintiff applied for and accepted an offer for the position. (Doc. 1, ¶ 40). Plaintiff alleges that the position was "without pay." (*Id.*). But Plaintiff also inconsistently alleges that the new position came with significantly increased workload "without any *increase* in pay." (Doc. 1, ¶ 41) (emphasis added). Plaintiff alleges that Plaintiff began to experience an increase of PTSD symptoms and suicidal ideation due to the high workload and stress caused by the new position. (Doc. 1, ¶ 42). Plaintiff's supervisors encouraged Plaintiff not to leave the position because it was a great opportunity for Plaintiff. (Doc. 1, ¶ 43). Plaintiff believes that Plaintiff was encouraged to take the position and remain "in order to create an untenable work environment that would eventually induce Plaintiff to quit." (Doc. 1, ¶ 44).

On or about December 6, 2023, Plaintiff was informed that Plaintiff would be giving a presentation to a group of supervisors to prove that Plaintiff was capable of training others. (Doc. 1, ¶ 45). According to Plaintiff, "no other trainers were required to deliver a practice presentation to prove their teaching skills." (Doc. 1, ¶ 46). Plaintiff believes that the VA asked Plaintiff to make the presentation to "unreasonably add to Plaintiff's workload." (Doc. 1, ¶ 47). Plaintiff alleges that that Plaintiff attempted to bring these concerns to the VA, but the concerns were deflected by an unidentified person "stating that Plaintiff was 'too emotional' to discuss the matter." (Doc. 1, ¶ 48).

In January 2024, Plaintiff requested Leave Without Pay (LWOP). (Doc. 1, ¶ 49). Plaintiff was approved for LWOP the day prior to when the requested leave was scheduled to start. (*Id.*). Plaintiff further alleges that Plaintiff was told that Plaintiff had to receive approval to attend training and events hosted by the VA, despite this not being protocol for other employees. (Doc. 1, ¶ 50). Plaintiff also alleges that seven of Plaintiff's coworkers committed suicide in 2024 and

3

that the VA did not offer Plaintiff any additional support or mental health services. (Doc. 1, ¶¶ 51-52).

On March 14, 2024, Plaintiff initiated an informal complaint of discrimination by contacting the Equal Employment Opportunity Office. (Doc. 1, ¶ 13). Plaintiff's informal complaint was converted to a formal Charge of Discrimination on April 25, 2024. (Doc. 1, ¶ 14). Plaintiff received a Final Agency Decision on or about December 9, 2025. (Doc. 1, ¶ 17).

Plaintiff filed this action on March 6, 2026. (Doc. 1). Plaintiff brings what appears to be four separate claims for relief under Title VII and the Rehabilitation Act: (1) sex based discrimination in violation of Title VII; (2) sex based hostile work environment in violation of Title VII; (3) disability based discrimination in violation of the Rehabilitation Act; and (4) disability based hostile work environment in violation of the Rehabilitation Act. (Doc. 1, ¶¶ 59-78).

**ARGUMENTS AND AUTHORITIES**

## I.   Governing Legal Standard – Failure to State a Claim

"When considering a motion to dismiss, '[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true' and all reasonable inferences must be afforded to the plaintiff." *Funk v. Pinnacle Health Facilities XXXII, LP*, No. 17-1099-JTM, 2017 WL 3492312, at *2 (D. Kan. Aug. 15, 2017) (quotation omitted). But unlike the factual allegations contained in a complaint, the Court need not accept the plaintiff's legal conclusions as true. *See, e.g., Brooks v. Sauceda,* 85 F. Supp. 2d 1115, 1119 (D. Kan. 2000).

> To survive a motion to dismiss, a complaint must contain factual allegations that "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Thus, the complaint must contain allegations that create a claim

4

for relief not just speculatively but plausibly. *Robbins v. Okla*., 519 F.3d 1242, 1247 (10th Cir. 2008).

*Woodward v. DCCCA Inc.*, No. 09-1410-JTM, 2011 WL 42879, at *2 (D. Kan. Jan. 6, 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**II.   Plaintiff failed to timely exhaust Plaintiff's administrative remedies for any discrete acts of discrimination occurring before January 29, 2024.**

"Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur." *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005). "Federal employees alleging discrimination . . . prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). In pertinent part, an aggrieved federal employee must bring any claim of discrimination to an EEO counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). Discrete discriminatory acts occurring outside of this 45-day window are not actionable even when such acts "are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

The exhaustion requirement is significant because "federal courts may not entertain claims [against the United States or its agencies] that were not administratively exhausted." *Hickey v. Brennan*, No. 19-CV-00413-MEH, 2019 WL 9088066, at *2 (D. Colo. July 31, 2019), *aff'd*, 969 F.3d 1113 (10th Cir. 2020).  And although the exhaustion requirement is no longer a jurisdictional prerequisite for suit, it remains a valid affirmative defense that "may be raised in a

motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019).

Here, the face of the Complaint shows that Plaintiff failed to timely exhaust Plaintiff's administrative remedies for certain claims. Plaintiff first sought informal counseling by initiating a complaint of discrimination "with the local Equal Employment Opportunity Office" on March 14, 2024. (Doc. 1, ¶ 13). Therefore, any claim for a discrete act of alleged discrimination that occurred prior to January 29, 2024 (*i.e.*, 45 days prior to the date Plaintiff contacted an EEO Counselor) is barred as a matter of law. Given this, the following claims are barred as a matter of law because they occurred prior to January 29, 2024:

> (1) in or about 2022, Plaintiff was asked to make a presentation to educate coworkers on non-traditional pronouns (Doc. 1, ¶¶ 27-29); (2) in or about 2022, unidentified supervisors "began to create problems for Plaintiff (Doc. 1, ¶ 31); (3) on or about November 23, 2023, Plaintiff was asked questions during an interview that were not on the list of normally approved questions (Doc. 1, ¶ 35); (4) in or about November 2023, Plaintiff applied for and accepted a position that had a significant increase in workload without an increase in pay (Doc. 1, ¶¶ 39-42); and (5) on December 6, 2023, Plaintiff was asked to give a presentation to prove that Plaintiff was capable of training others (Doc. 1, ¶ 45).

The Court should therefore order that any claims for discrete acts of discrimination occurring before January 29, 2024, including the five listed claims, be dismissed with prejudice because Plaintiff failed to timely exhaust those claims.

## III. Plaintiff has not plausibly stated a *prima facie* claim for unlawful discrimination under Title VII or the Rehabilitation Act.

A plaintiff may establish a violation of Title VII "by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas*." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Plaintiff does not allege direct evidence of discrimination, so to state a Title

VII discrimination claim Plaintiff must allege facts plausibly establishing that: "(1) [they] belong to a protected class; (2) [they] suffered an adverse [personnel] action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (internal quotation marks and citation omitted); *see also Nelson v. DeJoy*, 2024 WL 3507723, at *3 (10th Cir. July 23, 2024).

The Rehabilitation Act, on the other hand, prohibits the federal government from discriminating against an "otherwise qualified individual with a disability . . .  solely by reason of his or her disability." 29 U.S.C. § 794(a). In the context of an employment discrimination claim, the standard for determining whether the Rehabilitation Act has been violated is the same standard applied under the Americans with Disabilities Act (ADA). 29 U.S.C. § 794(d). Thus, to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, Plaintiff must show that Plaintiff: (1) "is a disabled person as defined by the ADA"; (2) "is qualified, with or without reasonable accommodation, to perform the essential functions of the job"; and (3) "suffered discrimination by an employer or prospective employer *because of* that disability." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir.2011) (emphasis added). A federal employee asserting disability discrimination must show that the alleged discriminatory act constitutes an adverse employment action that was taken because of the alleged disability. *Brown v. Austin*, 13 F.4th 1079, 1092 (10th Cir. 2021).

Here, Plaintiff's Title VII discrimination/disparate treatment claim should be dismissed because the listed actions are not personnel actions and because Plaintiff has not plausibly alleged that the actions were taken because of Plaintiff's sex. Plaintiff's Rehabilitation Act discrimination claim should also be dismissed because Plaintiff has not plausibly alleged that the actions were taken *because of* Plaintiff's disability.

### A. Plaintiff has not plausibly alleged that Plaintiff suffered a personnel action as that term is defined by the Civil Service Reform Act.

"[N]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 604 (10th Cir. 2019) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005)). Instead, only personnel actions may form the basis of federal-sector employment discrimination claims under Title VII.

Under Title VII's federal-sector provision, 42 U.S.C. § 2000e-16(a), "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." As the Supreme Court and the Tenth Circuit have recognized, the meaning of the term personnel action "is easy to understand," because the Civil Service Reform Act (CSRA) provides a list of employment decisions that constitute a "personnel action." *Babb v. Wilkie*, 589 U.S. 399, 405 (2020) (citing 5 U.S.C. § 2302(a)(2)(A)); *Nelson*, 2024 WL 3507723, at *3 (applying the same to Title VII). Such "personnel actions" include (1) appointments; (2) suspensions, removals, "or other disciplinary or corrective actions"; (3) a "decision concerning pay, benefits, or awards"; (4) decisions regarding training "if the training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in [subsection 2302(a)(2)(A)]"; and (5) "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A).

Here, as discussed above, Plaintiff failed to timely exhaust any discrete acts of discrimination occurring before January 29, 2024. The Complaint appears to contain only two allegations of discrete acts that *potentially* occurred *after* January 29, 2024. First, Plaintiff alleges

8

that "in January 2024" Plaintiff's request for Leave Without Pay was not approved until the day before the LWOP was set to begin. (Doc. 1, ¶ 49). Second, Plaintiff alleges that Plaintiff was required to seek approval to attend training and events. (Doc. 1, ¶ 50).[3] This allegation is not dated, but Defendant assumes that it occurred in January 2024 or later because Plaintiff's Complaint appears to be in chronological order.

These two events do not conceivably fall within an enumerated "personnel action" under the CSRA or into that term's catch-all—"any other *significant* change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii)) (emphasis added). Plaintiff never alleges that Plaintiff was denied LWOP or that Plaintiff suffered any adverse decision related to Plaintiff's LWOP request. Indeed, Plaintiff admits that Plaintiff's request was approved. Plaintiff simply found the timeframe for approval to be inconvenient. Plaintiff also never alleges that Plaintiff was denied the opportunity to participate in any training or event. And Plaintiff includes no facts from which the Court could plausibly infer that there was a moderate possibility that the training might reasonably have been expected to have led to an appointment, promotion, performance evaluation, or other covered action. *See* 5 U.S.C. § 2302(a)(2)(A)(ix); *Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 607 (1991), *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992) ("'[M]ay reasonably be expected to' lead to a personnel action can be interpreted to mean a moderate probability that the training will result in some type of personnel action").

---

[3] Plaintiff also alleges that Plaintiff experienced "other disparate treatment." (Doc. 1, ¶ 62). The Court should decline to credit Plaintiff's vague and conclusory allegation because it fails to meet the Rule 8 pleading standard. *Sims v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 120 F. Supp. 2d 938, 950 (D. Kan. 2000) (declining to consider allegations that a plaintiff was "otherwise discriminated against" because "it fails to meet the pleading requirements set forth in Fed. R. Civ. P. 8(a).").

Thus, because Plaintiff's Complaint fails to plausibly allege that Plaintiff suffered a personnel action as that term is defined by the CSRA, the Court should dismiss Plaintiff's Title VII discrimination claim.

### B. Plaintiff fails to plausibly allege facts that would support an inference of discrimination based on Plaintiff's sex or alleged disability.

The "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the [personnel action] occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (citations and quotations omitted). "[G]eneral assertions of discrimination . . ., without any details whatsoever of events leading up to [the event], are insufficient to survive a motion to dismiss. While specific facts are not necessary, some facts are." *Khalik*, 671 F.3d at 1193 (citations and quotations omitted); *see also Brown v. Titan Prot. & Consulting*, Case No. 21-3122, 2022 WL 1014154, at *3 (10th Cir. Apr. 5, 2022) (affirming dismissal for failure to state a plausible claim where the "complaint offers nothing more than legal conclusions that discrimination was behind [the employer's] employment decision.") (unpublished). It is also insufficient for a plaintiff to simply allege that he or she was similarly situated to other employees. *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (citation omitted) (plaintiff's "assertion that she is 'similarly situated' to other employees is 'just a legal conclusion—and a legal conclusion is never enough.'").

Here, Plaintiff's Complaint sets out that Plaintiff was treated worse "because of" Plaintiff's non-binary identity and PTSD. (Doc. 1, ¶¶ 54-57). But those allegations offer nothing more than legal conclusions. And the surrounding factual allegations do not fill the gaps in a way that would support an inference that the alleged personnel actions took place under an inference of discrimination. Plaintiff does not develop any facts from which the Court might plausibly

infer that any decisionmaker harbored a discriminatory animus towards Plaintiff. Plaintiff does not connect any alleged personnel action to any decisionmaker who allegedly harbored a discriminatory animus. And Plaintiff does not connect Plaintiff's alleged disclosure of Plaintiff's non-binary status or PTSD to the timing of any alleged personnel action. Indeed, Plaintiff includes *no* disability-related factual allegations in Plaintiff's Complaint. Plaintiff just proclaims that Plaintiff was treated differently on the basis of Plaintiff's disability. And the one sex-specific allegation in the Complaint—alleged misgendering—does nothing to rescue Plaintiff's claims. Plaintiff does not provide any context to this allegation, such as who failed to consistently use Plaintiff's preferred pronouns, whether it was intentional or accidental[4], whether the alleged misgendering was spoken directly to Plaintiff, or whether the alleged misgendering influenced any alleged personnel action. Without these basic facts, Plaintiff's claims do not plausibly allege facts that raise in inference that the alleged personnel actions took place under an inference of discrimination.

## IV.   Plaintiff has not plausibly stated a *prima facie* claim for hostile work environment based on Plaintiff's sex or disability.

To state a plausible claim based on a hostile work environment, Plaintiff must allege facts capable of supporting a plausible finding or inference under the totality of the circumstances that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment*." Iweha v. Kansas*, 121 F.4th 1208, 1221 (10th Cir. 2024); *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (discussing claims under the Americans with Disabilities Act).

---

[4] As a matter of common experience, the Court should recognize that using singular "they/them" pronouns requires a speaker to override grammatical instincts, likely ingrained since childhood, that associate singular pronouns with gendered referents, making even the most well-intentioned speakers susceptible to mistakes.

Here, Plaintiff's hostile work environment claims fail because Plaintiff failed to plead facts sufficient to support a plausible inference that (1) the acts constituting the allegedly hostile work environment had any nexus to Plaintiff's sex or disability; and (2) the alleged harassment was so "severe" or "pervasive" as to create an abusive working environment that is actionable under Title VII or the Rehabilitation Act.

### A. Plaintiff failed to allege any well-pleaded facts showing a nexus between the alleged harassment and a protected category.

"General harassment is not actionable—the harassment must be based [on a protected category]." *Bryant v. Neb. Furniture Mart*, No. 20-2216-DDC-JPO, 2021 WL 259294, at *7 (D. Kan. Jan. 26, 2021) (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)). "A plaintiff must show more than a few isolated incidents of [sexual or disability-based] enmity or sporadic [sexual or disability-based] slurs. Instead, a plaintiff must show a steady barrage of opprobrious [sexual or disability-based] comments." *Id.* (citations and quotations omitted).

Here, absent Plaintiff's conclusory allegations and legal conclusions, Plaintiff offers nothing that plausibly supports an inference that the hostile work environment existed because of Plaintiff's sex or disability. Plaintiff alleges "no *facts* that [Plaintiff's] supervisors or co-workers insulted or ridiculed [Plaintiff] due to [a protected class]", or that any of Plaintiff's protected classes were "negatively commented on by anyone in [Plaintiff's] work environment." *Olonovich v. FMR-L.L.C. Fid. Invs.*, No. CV 15-599 SCY/WPL, 2016 WL 9777193, at *7 (D.N.M. June 21, 2016) (emphasis added). Plaintiff simply claims in a conclusory fashion that unidentified coworkers and supervisors failed to consistently use Plaintiff's preferred pronouns, that traditional binary employees were treated better, and that Plaintiff was treated differently because of Plaintiff's disability. (Doc. 1, ¶¶ 28, 54 & 56). These conclusory, generalized allegations are insufficient even at this stage of the case. *See Washburn v. Kingsborough Cmty.*

12

*Coll.*, No. 20-CV-0395-DLI-MMH, 2023 WL 2682521, at \*13 (E.D.N.Y. Mar. 29, 2023) ("Although Plaintiff contends that Defendants misgendered Plaintiff 'on many occasions' and that Russell expressed 'discomfort' with Plaintiff's gender and gender identity, generalized and conclusory allegations are insufficient.").

At bottom, Plaintiff simply has not alleged facts plausibly supporting an inference that the alleged harassment had anything to do with Plaintiff's sex or disability. As a result, Plaintiff has failed to state a plausible claim for relief as to Plaintiff's hostile work environment claim.

### B. Plaintiff's hostile work environment claim fails because the alleged conduct is not "severe" or "pervasive".

Even if Plaintiff were able to show a connection between the alleged conduct and a protected category (which Plaintiff has not), Plaintiff does not allege any facts showing the type of extreme workplace conduct necessary to support a claim for hostile work environment.

The law does not establish a "general civility code for the workplace." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (citation omitted). A plaintiff "may not predicate a hostile work environment claim on 'the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces.'" *Id.* (citation omitted). This is based on the premise that "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).[5] Instead, a plaintiff must show that the workplace was "*permeated* with discriminatory intimidation, ridicule, and insult" that was so sufficiently "severe or pervasive to alter the conditions of [plaintiff's] employment and create an

---

[5] *Sunbelt Rentals, Inc.* has been cited as persuasive authority by the Tenth Circuit in *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) and was more recently cited in this district as persuasive authority in *Pfannenstiel v. Kansas*, Case No. 21-CV-04006-HLT-ADM, 2022 WL 873674, at \*14 (D. Kan. Mar. 24, 2022).

abusive working environment." *Shaw v. Tulsa Dynaspan Arrow Concrete*, 408 F. App'x 177, 179 (10th Cir. 2011) (emphasis added) (quoting *Sandoval v. Boulder Reg'l Commc'ns Ctr.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). This is an "extremely high bar" that requires a showing that the workplace "was not just uncomfortable at times, but overtly hostile in an unlawful way." *Iweha*, 121 F.4th at 1225.

In *Iweha*, the Tenth Circuit affirmed summary judgment against a Nigerian-born employee whose workplace allegations over a period of roughly two years included a supervisor's remark that "Nigerian woman do not go to school," derogatory questions about her culture, questions about whether the employee washed her hair, a disparaging comment about Martin Luther King, Jr., and the display of slave trade beads. *Id.* at 1214. The Court held that those incidents—"viewed in isolation or in the aggregate"—did not "rise to the level of creating a hostile work environment." *Id*. at 1223.

Here, the allegations contained in Plaintiff's Complaint do not come close. At most, Plaintiff alleges that some unidentified employees inconsistently used Plaintiff's preferred pronouns. Plaintiff does not allege that this conduct was intentional, Plaintiff does not allege that any employee used slurs in referring to Plaintiff, and Plaintiff does not allege any facts showing that any employee displayed any overt animus towards Plaintiff. Plaintiff fails to allege any conduct that is remotely equivalent to comments and conduct that the Tenth Circuit found insufficient in *Iweha*. And Plaintiff's allegations certainly are not comparable to the conduct that the Tenth Circuit held may satisfy the "extremely high" bar such as nooses in the workplace, repeated use of racial slurs, expressing support for lynching, and a direction by a supervisor to use the phrase "YES MASSA." *See Iweha*, 121 F.4th at 1223-25 (contrasting *Lounds*, *Tademy v. Union Pac. Corp.*, 614 F.3d 1132 (10th Cir. 2008), and *Hernandez v. Valley View Hosp. Ass'n*,

14

684 F.3d 950, 960 (10th Cir. 2012)); *see also Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 521 (10th Cir. 2017) (a supervisor's overtly racist comment that African Americans' hands and the bottom of their feet are white from assuming the position to be frisked and arrested, suggestion to that the plaintiff should wear a collar and leash on Juneteenth, and suggestion that the plaintiff should go on welfare didn't rise to the level necessary to state a claim for a hostile work environment) (unpublished).

Accordingly, even if Plaintiff had alleged facts plausibly supporting an inference that the alleged harassment was based on Plaintiff's sex or disability, Plaintiff's claim is still subject to dismissal for failure to state a claim upon which relief may be granted because the alleged conduct as alleged in the Complaint was neither severe nor pervasive.

<u>CONCLUSION</u>

For the above stated reasons, Defendant respectfully requests that the Court dismiss this action for failure to state a claim upon which relief may be granted.

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

/s/ Brian E. Vanorsby
Brian E. Vanorsby, KS #27606
Assistant United States Attorney
United States Attorney's Office
District of Kansas
1200 Epic Center
301 N. Main |Wichita, Kansas 67202
Office: 316.269.6103
Fax: 316.269.6484
E-mail: brian.vanorsby@usdoj.gov
*Attorneys for Defendant*

15

## CERTIFICATE OF SERVICE

I certify that on May 6, 2026, the foregoing document was electronically filed by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants at the time of filing.

s/ *Brian E. Vanorsby*
Brian E. Vanorsby
Assistant United States Attorney