IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

SIDNEY MORGAN,                     )
                                       )
            Plaintiff,        )
                                       )
vs.                                 )      Case No.  2:26-CV-02124-TC-ADM
                                       )
                                       )
DOUGLAS A. COLLINS, in his official    )
Capacity as Secretary of Veterans Affairs,    )
                                       )
            Defendant.     )

## <u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

COMES NOW Plaintiff Sidney Morgan ("Plaintiff"), by and through undersigned counsel, and in Opposition to Defendant Douglas Collins' ("Defendant") Motion to Dismiss, states as follows. This action seeks to vindicate Plaintiff's civil rights against a relentless and compounding series of discriminatory and retaliatory acts that collectively altered the terms and conditions of Plaintiff's employment. From the outset of the relevant time period, Plaintiff was forced to fight for their employment rights at every turn, navigating a hostile environment where the conduct of Plaintiff's coworkers, some of which were in supervisory positions over Plaintiff, carried clear implications that would foreseeably lead to adverse personnel actions had Plaintiff not actively enforced their rights. Plaintiff's claims, when viewed holistically and consistent with governing law, are well-pled, administratively exhausted, and present a *prima facie* case of sex and disability discrimination.

## I.      Nature of the Case

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, alleging ongoing sex discrimination, a hostile work environment, and pursuant to the Rehabilitation Act

of 1973, alleging disability discrimination and a hostile work environment against Plaintiff. Plaintiff was subjected to a pervasive pattern of adverse treatment by their supervisors and coworkers due to their gender identity and disability. The cumulative effect of Defendant's conduct was to create an unlawfully hostile and retaliatory work environment, undermining Plaintiff's ability to perform their duties fully and effectively. Defendant's employees' conduct infringed upon Plaintiff's statutory rights and required them to actively seek enforcement of those rights or face negative employment actions. The fact that Defendant did not impose formal discipline, suspend Plaintiff, or ultimately terminate their employment is due solely to Plaintiff's diligent enforcement of their rights. Plaintiff must not be penalized and Defendant must not be permitted to escape liability for repeated attempts to violate those rights simply because Plaintiff had the wherewithal to oppose Defendant's discriminatory attempts at manufacturing a record against them. Ultimately, Plaintiff did allege a negative employment action against them by Defendant as described below. Defendant's motion must be denied.

## II.    Statement of Additional Relevant Facts

The additional facts presented below, drawn directly from Plaintiff's Complaint (Doc. 1), demonstrate a continuous and compounding series of events that collectively establish both discrimination and a hostile work environment based on Plaintiff's sex and disability. These instances, far from being discrete or isolated, reveal a consistent effort by Defendant's agents to undermine Plaintiff's employment and altering the conditions of their employment, thereby forcing Plaintiff to defend their rights. The following factual allegations are taken from Plaintiff's pleadings (Doc. 1):

1.  Plaintiff is a non-binary individual diagnosed with post-traumatic stress disorder. Doc. 1, ¶ 22).

2. Plaintiff specifically alleged they were subjected to discriminatory disparate treatment by their coworkers due to their sex and disability. (Doc. 1, ¶ 24).

3. Plaintiff specifically alleged their coworkers engaged in a pattern of repetitious and ongoing discrimination due to their sex beginning in 2022 by refusing to use Plaintiff's preferred pronouns of they/them despite repeated corrections. (Doc. 1, ¶ 28).

4. Plaintiff further alleged that their supervisors participated in and specifically condoned the same behavior despite Plaintiff's repeated efforts to have the misconduct corrected. (Doc. 1, ¶¶ 25 and 28).

5. Defendant directed Plaintiff to create a presentation on non-traditional pronouns for their peers, which Plaintiff declined to do due to workload. (Doc. 1, ¶¶ 29 and 30).

6. Plaintiff pled that after Plaintiff declined to create such a presentation due to workload, Defendant completely abandoned any attempts to educate or correct the misgendering of Plaintiff by their coworkers and supervisors. (Doc. 1, ¶ 32).

7. Plaintiff interviewed for a new position on November 23, 2023. (Doc. 1, ¶35).

8. Plaintiff alleges Defendant's interviewers deviated from the list of acceptable interview questions for the purpose of weakening Plaintiff's position as a candidate for the position. (Doc. 1, ¶¶ 35 and 37).

9. The interviewers did not ask Plaintiff any questions concerning their job capabilities. (Doc. 1, ¶ 36).

10. Plaintiff pled the interviewers did not ask the other candidates questions outside of the acceptable list of questions. (Doc. 1, ¶ 38).

11. Plaintiff specifically pled, they were not made aware that a new position they were encouraged to apply for and ultimately awarded was one that significantly increased their workload without any additional pay. (Doc. 1, ¶¶ 39-41).

12. Plaintiff was not informed they would not be receiving additional pay for the new position until after they accepted the position. (*Id.*).

### III.   Standard of Review

#### a.   Motion to Dismiss under F.R.C.P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations, it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). However, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. The court's task is to determine whether the complaint states a legally sufficient claim for relief, not to weigh the evidence or determine whether the plaintiff will ultimately prevail. Id.

#### b.   Legal Standard for the Continuing Violation Principle

The continuing violation principle is an equitable doctrine that allows courts to consider acts of discrimination that occurred outside the statutory time limitations period if they are part of an ongoing pattern of discrimination. *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1028 (10th Cir. 1993). To invoke the continuing violation exception for Title VII charge-filing deadlines, a plaintiff must demonstrate either a sequence of connected discriminatory actions against a single individual, with at least one occurring within the permissible timeframe, or the existence of an employer's systemic discriminatory policy that was in effect both before and during the limitations period. *Id*.

To prove a series of related acts, a plaintiff must show that the acts rise to the level of a dogged pattern of discrimination as distinguished from isolated and sporadic outbreaks. *Id*. The evidence must support a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation.

There is not a clear standard for determining when alleged discriminatory acts are related closely enough to constitute a continuing violation however three inquiries are relevant, though not exhaustive: (1) whether the alleged acts involve the same type of violation; (2) whether the acts are recurring versus isolated; and perhaps most important, (3) whether the acts have the degree of permanence which should alert the employee to the duty to assert their rights. *Id*. This doctrine is particularly relevant in cases involving hostile work environments, which inherently involve repeated conduct rather than single, discrete acts. *See id.* (applying the continuing violation doctrine); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (explaining the nature of hostile work environment claims).

In *Purrington* the court determined the plaintiff's sexual harassment claims did not qualify as a continuing violation; despite an initial period of harassment by their supervisor ending in May

1988, the two subsequent isolated incidents she cited in spring and summer 1989 were too distant and unrelated to constitute a "dogged pattern of discrimination" that would extend the actionable period beyond November 1988.

In the present case, the alleged discriminatory acts occurred consistently over a continuous sixteen-month period, from November 2023 to March 2024, involving repeated actions such as constant misgendering for the entire sixteen-month period, threatened denial of accommodation, denial of a promotion, deviation from standard interview questions, non-standard changes in work assignments, assignments, increased duties without additional pay, and requiring Plaintiff to obtain specific permissions that employees outside of Plaintiff's protected classes were not required to obtain. This sustained series of closely related incidents, without a significant break or the departure of a key actor, demonstrates a "dogged pattern of discrimination" that readily falls within the continuing violation principle, unlike the sporadic events found insufficient in *Purrington* occurring a year after the first series of events. *Id*.

IV.     **Plaintiff Sufficiently Pled Prima Facie Sex Discrimination Claims Under Title VII.**

To constitute a sufficient Title VII discrimination claim, Plaintiff must demonstrate that they (1) belong to a protected class, (2) endured an adverse employment action, (3) met their employer's legitimate qualifications for the role, and (4) were treated less favorably than similarly situated employees outside their protected class. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024). Defendant claims Plaintiff failed to allege a negative employment action and that their case must fail for this reason. Defendant is incorrect. Plaintiff alleged they were denied a significant promotion, encouraged to apply for a different position which included a significant increase in work but no increase in pay. Further, Plaintiff was not told they would not be receiving a pay increase until after they had already accepted the new position. Materially

increasing an employee's workload and refusing to pay them for it constitutes a negative personnel action in the form of denied pay to which Plaintiff would otherwise be entitled.

## V.    Plaintiff Sufficiently Pled Claims of Disability Discrimination Under the Rehabilitation Act.

Plaintiff has sufficiently pled a claim of disability discrimination under the Rehabilitation Act. In their Complaint for Damages, Plaintiff directly alleged they are a member of the protected class of disabled persons, (Doc. 1, ¶¶ 22 and 23). Further, Plaintiff alleged that after their gender identity was discovered, coworkers began engaging in a series of actions that specifically triggered their PTSD (Doc. 1, ¶¶ 42 - 44). The same acts that support Plaintiff's claims of sex discrimination support Plaintiff's claims of disability discrimination. Plaintiff's discrimination claims are deeply intertwined.

## VI.    Adverse Employment

To establish an adverse employment action, a plaintiff must show a reasonable employee would have found the challenged action materially adverse—that is, it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Henrie v. Carbon Sch. Dist.*, 2023 U.S. App. LEXIS 3365, at *5 (10th Cir. Feb. 13, 2023). Not every workplace decision that upsets an employee is actionable. *Id*. Petty slights, minor annoyances, and mere lack of good manners ordinarily do not qualify. *Id.* A materially adverse action must carry a significant risk of humiliation, damage to reputation, or concomitant harm to future employment prospects to be actionable. *Id*.

The Tenth Circuit "liberally define[s] the phrase 'adverse employment action.'" *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1140 (10th Cir. 2011) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). It evaluates adverse-action claims on the particular facts of each

case, taking "a case-by-case approach." *Id*. (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004)) (internal quotation marks omitted).

Generally, "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" qualify as adverse employment actions. *Id.* (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006)). However, the term "adverse employment action" is not necessarily "limited to such acts." *Id*. (citing *Hillig*, 381 F.3d at 1032–33). A job reassignment may be materially adverse depending on the particular circumstances. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). That determination is made from the perspective of a reasonable person in the plaintiff's position, considering all relevant factors. *EEOC* at 1140.

In the present case,

**VII.    Alternatively, if Plaintiff's Complaint is deemed insufficient as pled, Plaintiff should be granted leave to amend their Complaint for Damages under F.R.C.P. 15(a)(2).**

Federal Rule of Civil Procedure 15(a)(2) states that leave shall be freely given to amend a pleading when justice requires. Although Plaintiff believes that their case has been sufficiently pled, should the Court agree with Defendant, Plaintiff requests an opportunity to amend the pleading to correct any deficiencies. Plaintiff's request is in the interests of justice and will not be prejudicial to Defendant as Defendant has been on notice of the existence and nature of Plaintiff's claims since at least January 2024 when Plaintiff first made their informal complaint of discrimination. Those complaints were subsequently accepted for investigation when Plaintiff converted their informal complaint to a formal one in March 2024.

## VIII.   CONCLUSION

Plaintiff has clearly met their pleading burden such that Defendant's motion should be denied. Plaintiff has clearly articulated facts that when taken as true establish an ongoing pattern of discrimination and retaliation that continued for a period of sixteen months resulting in material alteration of the terms of Plaintiff's employment as well as economic and emotional damages. Defendant's motion must be denied. In the alternate, Plaintiff requests the Court grant them leave to amend their pleading should this Court find Plaintiff's Complaint deficient.

WHEREFORE, Plaintiff requests this Court deny Defendant's Motion to Dismiss, or, in the alternate, grant Plaintiff an opportunity to amend their pleadings pursuant to F.R.C.P. 15(a)(2), and for any further relief this Court deems appropriate.

MISSOURI KANSAS QUEER LAW

/s/ Mary Madeline Johnson
Mary Madeline Johnson, DKAN #77985
103 W. 26th Avenue, Suite 200
North Kansas City, MO 64116
Tel: (816) 607-1836
madeline@mokanqueerlaw.com

ATTORNEY FOR PLAINTIFF

## Certificate

I hereby certify that a copy of the foregoing was served on all parties of record via the court's electronic filing system on this 18th day of May 2026.

/s/Mary *Madeline Johnson*
Mary Madeline Johnson